Commonwealth *v.* Hamilton, Appellant.

Argued May 3, 1971. Before BELL, C. J., EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Harold L. Randolph,* for appellant.

*James T. Owens,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, December 20, 1971:

On March 20, 1968, appellant William Hamilton was tried before a jury and found guilty of murder in

the first degree under our felony-murder rule. Following denial of post-trial motions by the court *en banc,* Hamilton was sentenced to life imprisonment.[1] The primary question presented for our consideration is whether, in the absence of any *Miranda* warning,[2] an oral confession made by appellant while in the custody of police officers in response to an accusation by a co-conspirator was properly admitted in evidence over timely objection by defense counsel.[3]

The transcript of the suppression hearing and the notes of trial testimony in the instant case reveal the following facts:

Bernard Simmons, the proprietor of a small grocery store, was killed during the course of a robbery at his store on the night of July 20, 1963. Appellant was arrested on May 22 of the following year on an unrelated charge of burglary. The police admitted at trial that at the time of this arrest appellant was also a suspect in the Simmons murder.

Following his arrest, Hamilton underwent several hours of interrogation concerning the burglary. The following morning appellant was taken to a small office at police headquarters where he was not questioned, but seated, handcuffed to a chair, and guarded by several officers. At the same time, one Edward Bennett, the prime suspect in the Simmons murder

---

[1] The trial judge (BRADLEY, J.) dissented from the denial of post-trial motions.

[2] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966).

[3] While the challenged statement which is the subject matter of this appeal was made on May 23, 1964, prior to the United States Supreme Court decision in *Miranda,* the trial did not take place until 1968, after the *Miranda* decision. Thus, the applicable standard for determining the admissibility of the statement in the instant case is that enunciated in *Miranda.* See *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882 (1966) ; *Commonwealth v. Willman,* 434 Pa. 489, 255 A. 2d 534 (1969).

case, was being questioned by other police officers in a nearby room. Bennett noted Hamilton's presence, and asked his interrogator why Hamilton was there. The officer replied, "[h]e is telling us things." Upon hearing this, Bennett became excited and proceeded to confess to involvement in the murder. Bennett claimed, however, that he had only been a lookout and that Hamilton had actually fired the fatal shots.

After Bennett had finished his statement, the interrogating officer asked him whether he was "willing to confront Willie Hamilton with what you just told us." Bennett replied in the affirmative, and was immediately taken across the hallway where he confronted appellant and accused him of being the "triggerman" in the crime. Appellant sat mute for thirty seconds to a minute and then stated that he was "going to tell the truth." Then Hamilton, in an apparent attempt to exculpate himself, related that he had accompanied Bennett to the murder scene at the Simmons store, but had not done the shooting.

At the outset it should be emphasized that appellant was not apprised of his constitutional rights, see *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), from the time of his arrest until *after* his oral statement. Appellant contends that he at no time waived his Fifth Amendment privilege against self-incrimination, and thus his oral statement should not have been admitted into evidence over timely objection by his counsel.

The crux of the problem presented in this case is whether appellant's statement was the result of restraint of his freedom, or whether it was spontaneous and voluntary. We recognize, of course, that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the *Miranda* decision]." *Miranda v. Arizona, supra.*

Voluntary statements are admissible because they are the product of choice or conscience rather than compulsion. A volunteered confession has its genesis in the mind of a declarant who speaks with a free will, uninfluenced by any form of official coercion. This is not the character of the statement here challenged. Appellant was being held as a suspect in a murder case. He was not informed of his right to remain silent, to the assistance of counsel and the concomitant rights enunciated in *Miranda*. The confrontation between appellant Hamilton and Bennett was admittedly contrived by the police for the purpose of obtaining an incriminating statement from Hamilton. On cross-examination one police officer stated that such a technique has been used in "hundreds" of other cases.

In a similar case, *Commonwealth v. Bordner*, 432 Pa. 405, 247 A. 2d 612 (1968), the suspect confessed to his mother while he was being held in police custody. In *Bordner* we said: ". . . it can hardly be stated that these incriminating statements to the mother were spontaneous. The circumstances reveal a plan on the part of the police authorities to use the mother as a police instrumentality in the interrogation of the accused son and *the statements made to the mother, in the context of this factual setting, are as though made to the police themselves.*" (Emphasis added.)

Moreover, in *Commonwealth v. Simala*, 434 Pa. 219, 252 A. 2d 575 (1969), we held that "any question likely to or expected to elicit a confession constitutes 'interrogation' under Miranda." In *Simala*, a suspect was arrested and brought to the office of the local borough mayor where he was detained. Without being advised of his rights, the suspect was prodded by the mayor to make a statement in the presence of two police officers. While holding that the statement in *Simala* was involuntary, we noted that a confession can be volun-

tary only if it was given *"without any prompting"*. (Emphasis in original.)

In the case at bar, the police officers admitted at trial during cross-examination that co-conspirator Bennett was being used in an attempt to pry an incriminating statement from appellant. We agree with the dissenting judge below who emphasized that "[t]o sanction this technique without proper warnings would be to place a premium on the ingenuity of the police to devise methods of indirect interrogation, rather than to implement the plain mandate of *Miranda* that a suspect in custody should be clearly advised of his rights before any attempt is made to induce him to speak."

Our decision today in no way limits the use of truly voluntary confessions as evidence, nor is it intended to limit legitimate police interrogation techniques. We merely hold that a person whose freedom is restrained and who is a suspect must first be apprised of his constitutional rights prior to the initiation of *any* form of official interrogation be it direct or conducted indirectly through the offices of a third party.

Judgment reversed; new trial granted.

Mr. Justice JONES and Mr. Justice BARBIERI took no part in the consideration or decision of this case.